**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARI K. SPANGENBERG | : | CIVIL ACTION NO. |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| LIFE INSURANCE COMPANY OF | : | |
| NORTH AMERICA | : | |
| *Defendant* | : | |

**CIVIL ACTION COMPLAINT**

Now comes the Plaintiff, SHARI K. SPANGENBERG, by and through her undersigned counsel, and complains against the Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA, and states:

**I.    PARTIES**

1.    The Plaintiff, Shari K. Spangenberg ("Spangenberg" or "Plaintiff"), age 63 (born November 20, 1962), is a resident of New York, and resides at 12 Nixon Street, Hoosick Falls, New York 12090.

2.    Defendant, Life Insurance Company of North America ("LINA"), is a subsidiary of New York Life Insurance Company with its headquarters in Philadelphia, Pennsylvania. At all times relevant hereto, LINA was doing business throughout the United States and within the Eastern District of Pennsylvania.

**II.    JURISDICTION AND VENUE**

3.    Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(e)(1) and 1132(f), which encompasses the subject Group Long-Term Disability Plan under which Plaintiff was covered.

4.     The amount in controversy in this action is in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Defendant is subject to personal jurisdiction in this district.

6.     Plaintiff has exhausted all administrative remedies pursuant to the Plan's policy documents.

### III.    STATEMENT OF CLAIMS

7.     This action is brought as a claim for long-term disability benefits pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Spangenberg seeks payment of long-term disability benefits due under a group policy of insurance, number LK-0008348 ("the Policy"), issued by LINA for the benefit of employees of Lockheed Martin Corporation.

8.     The Policy provides payment of monthly disability income benefits for participants who meet the definition of Disability.

9.     At all times relevant hereto, the Policy constituted an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)).

10.     Incident to her employment with Lockheed Martin Corporation, Spangenberg received coverage under the Policy as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)).

11.     Immediately prior to ceasing work, Spangenberg was successfully employed as a Multi-Functional Information Systems Analyst for Lockheed Martin Corporation.

12.     Since at least 2022, Spangenberg has been diagnosed with and/or has suffered from multiple debilitating spinal and pain conditions, including chronic low back pain with

radiation to the bilateral lower extremities, associated sciatica symptoms, lumbar radiculopathy, lumbar spondylosis, degenerative spondylolisthesis, multilevel degenerative disc disease most pronounced at L5-S1, and sacroiliitis, with chronic pain syndrome, refractory neuropathic pain of low back, dorsalgia of lumbar region, and mild kyphoscoliosis of the thoracolumbar spine.

13.     An MRI of the lumbar spine dated October 27, 2022 documented Grade 1 anterior listhesis (degenerative spondylolisthesis) of L4 over L5; disc desiccation and disc space narrowing from L1-2 through L5-S1; severe facet degenerative changes bilaterally at L4-5 with marrow edema involving the facet joints extending into the adjacent pedicles (including the L4 pedicle); and a small synovial cyst arising from the right L4-5 facet joint encroaching on the right lateral recess and potentially impinging the right L5 nerve root. The report also noted mild facet degenerative changes at L5-S1 and that the L4-5 abnormalities had progressed compared to the MRI dated March 24, 2017.

14.     Prior to pursuing spinal cord stimulation, Plaintiff underwent extensive conservative treatment for her lumbar spine conditions. She participated in physical therapy, including therapeutic exercises, therapeutic activities, neuromuscular rehabilitation, and manual therapy, and also received electrical stimulation, cryotherapy, and hot pack therapy for pain relief. Plaintiff further underwent chiropractic treatment and multiple lumbar injections without sustained improvement. Despite these interventions, her symptoms persisted.

15.     Plaintiff has been prescribed multiple pain and related medications in connection with her lumbar conditions, including diclofenac, cyclobenzaprine (Flexeril), gabapentin, and tramadol. Records further reflect that she was prescribed duloxetine (Cymbalta) but it was discontinued, and that she was recommended a Butrans patch but was unable to tolerate it, and she also did not tolerate Nucynta due to side effects. Despite medication management, she

continued to report persistent low back pain radiating into both legs.

16.    Due to refractory neuropathic low back pain despite medical management, Spangenberg previously underwent a spinal cord stimulator trial with excellent relief of approximately a 70% reduction in pain and was thereafter admitted from July 9, 2024 through July 10, 2024 for permanent implantation of a thoracic spinal cord stimulator. On July 9, 2024, she underwent insertion of a spinal cord stimulator with percutaneous thoracic bilateral spinal cord stimulator and generator placement, including placement of the generator to the right flank and placement of one thoracic spinal cord stimulator to T8, using intra-operative fluoroscopy. At a post-operative follow-up visit on July 29, 2024 with Dr. Sukul, she reported approximately 40% relief at that time. While the stimulator provided partial relief, Plaintiff continued to experience significant pain and functional limitations and remained unable to perform the material and substantial duties of any occupation.

17.    As a result of her ongoing symptoms, Plaintiff last worked at Lockheed Martin Corporation as a Multi-Functional Information Systems Analyst on or about April 15, 2022.

18.    Plaintiff received short-term disability benefits from April 18, 2022 through October 16, 2022, after which her claim transitioned to long-term disability benefits commencing October 17, 2022.

19.    Despite her inability to work, on August 21, 2024, Plaintiff received a letter from Defendant denying her claim for long-term disability benefits beyond October 16, 2024.

20.    On April 12, 2025, Plaintiff's attorneys filed an appeal of the Defendant's decision to deny her long-term disability benefits.

21.    Following Plaintiff's April 12, 2025 appeal and subsequent supplemental

submissions, Defendant issued its final determination on July 10, 2025, notifying Plaintiff's attorneys that it would uphold its prior decision to deny long-term disability benefits.

22.     Despite evidence from multiple treating providers and other supporting evidence, Defendant denied Plaintiff's claim for long-term disability benefits.

23.     On September 20, 2024, Michele L'Hommedieu, P.T., of The Work Assessment and Conditioning Center of Eastern New York, performed a Functional Capacity Evaluation of Plaintiff. L'Hommedieu documented constant bilateral low back pain with bilateral posterior lower extremity pain (right greater than left), with pain rated 9/10 at the time of evaluation and decreased trunk range of motion including flexion with fingertips 18 inches from the floor and trunk rotations limited to 25% of active movement. On maximum effort testing, Plaintiff was unable to perform floor-to-knuckle lifting and was unable to lift from 12 inches to knuckle height due to core and lower extremity weakness; demonstrated a maximum of 3 pounds from knuckle-to-shoulder; was unable to lift from shoulder-to-overhead due to change in trunk mechanics; and demonstrated a maximum carry of 5 pounds with change in core body mechanics and lower extremity weakness. Ms. L'Hommedieu further noted that Plaintiff was unable to push or pull due to changes in body mechanics with core and lower extremity weakness; was unable to reach overhead; was unable to kneel or half-kneel due to inability to attain the positions; could sit for one hour at a time, stand for fifteen minutes at a time, and walk for ten to fifteen minutes at a time; and required upper-extremity assistance from both arms for sit-to-stand transfers. Stair climbing required two railings, ladder climbing was not tested due to balance deficit, and endurance projections could not be made at that time. Based on these findings, Ms. L'Hommedieu opined that Plaintiff is presently unable to work at a sedentary level under the Dictionary of Occupational Titles and lacks the required physical abilities to perform sustained

sedentary work.

24. On September 30, 2024, Plaintiff's treating provider, Keana Albert, PA-C, completed a Physical Capabilities Form documenting severe functional restrictions that preclude Plaintiff from maintaining gainful employment. Ms. Albert opined that, as of September 30, 2024, Plaintiff can sit for only one hour total, walk for only one hour total, and stand for only one hour total in an eight-hour workday, and can sit, stand, or walk for no more than one hour at a time. Plaintiff is limited to occasional lifting and carrying of up to ten pounds and can never lift or carry more than ten pounds. The form further reflects that bending, kneeling, squatting, climbing, reaching (including above shoulder), and twisting are not allowed, and that operating a motor vehicle is limited to approximately thirty minutes maximum. Based on these findings, Ms. Albert checked that Plaintiff is capable of "no work at all" under the U.S. Department of Labor employment classifications and indicated the limitations are permanent.

25. On April 9, 2025, Plaintiff's treating provider, Morgan Wasiczko, FNP-BC, completed a Physical Capabilities Form documenting severe functional restrictions that preclude Plaintiff from maintaining gainful employment. Ms. Wasiczko indicated that, in an eight-hour workday, Plaintiff can sit for only one hour total, walk for only one hour total, and stand for only one hour total, and can sit, walk, or stand for no more than one hour at a time. Plaintiff is limited to occasional lifting and carrying of up to ten pounds and can never lift or carry more than ten pounds. The form reflects that bending, kneeling, squatting, climbing, reaching (including above shoulder), and twisting are not allowed, and that operating a motor vehicle is limited to 30 minutes maximum. Ms. Wasiczko checked that these limitations are permanent and that Plaintiff is capable of "no work at all" under the U.S. Department of Labor employment classifications, effective April 9, 2025.

26. On September 10, 2024, Plaintiff's sister, Julie Simmons, provided a written statement regarding Plaintiff's functional decline and the long-term disability denial. Ms. Simmons explained that Plaintiff was historically an exceptionally hard worker and highly active in both work and home life, but that her pain progressed to the point that she could no longer engage in routine and recreational activities, and she ultimately was forced to stop working and go on long-term disability. Ms. Simmons reported that over the last approximately 1.5 years, Plaintiff's condition worsened significantly, that efforts to "prove" disability caused extreme pain for days, and that Plaintiff ultimately obtained an electric wheelchair and a stair chair to access her bedroom. Ms. Simmons described Plaintiff as experiencing pain radiating from her back down her legs into her feet, walking "like a 90-year-old" even for short distances within the home, and being unable to stand, lift, or twist to complete routine household tasks. Ms. Simmons further stated she was "beyond speechless" at any determination that Plaintiff could perform sedentary work, noting that even sedentary employment would still require basic functional capacities (e.g., preparing for work, driving, walking through a building) and that Plaintiff would need to lie down due to pain and would be unable to think clearly while in constant pain, making full-time work unrealistic.

27. On September 14, 2024, Plaintiff's daughter, Nicole Greenlaw, provided a written statement regarding Plaintiff's functional decline and the long-term disability denial. Ms. Greenlaw described Plaintiff as previously active and independent but reported that over the past several years, Plaintiff's pain and physical limitations worsened to the point that she can no longer perform routine household and yard tasks, cannot lift more than approximately five pounds, cannot walk for meaningful periods, and cannot navigate stairs, necessitating the use of assistive devices including a stair chair and a motorized wheelchair and/or motorized carts for

mobility in public. Ms. Greenlaw further reported that Plaintiff experiences severe pain and discomfort with sitting (including sitting in a vehicle), struggles with basic activities of daily living, and requires significant assistance from family for home upkeep and routine tasks. Ms. Greenlaw stated that these limitations are inconsistent with the ability to sustain even sedentary employment.

28.     On September 17, 2024, Plaintiff's sister-in-law, Laura Spadaro, provided a written statement regarding Plaintiff's functional limitations and long-term disability denial. Ms. Spadaro described observing a marked deterioration in Plaintiff's condition over time and reported that, during a July 2024 visit with Plaintiff in Hoosick Falls, New York, Plaintiff required a chair lift to access her bedroom and second-floor bathroom and relied on a mobility chair for ambulation. Ms. Spadaro reported that Plaintiff could no longer perform routine tasks requiring bending or reaching, including emptying a clothes dryer or dishwasher, retrieving items from the lower portions of the refrigerator/freezer or lower kitchen cabinets, or picking up after her dog, and that Plaintiff was unable to walk downstairs to access her basement and utility box. Ms. Spadaro further reported that Plaintiff was unable to prepare meals, shop for groceries, or climb in and out of a vehicle without excruciating pain, and that Plaintiff's chronic pain substantially impaired her ability to concentrate and to remain seated even for brief periods. Ms. Spadaro stated that, in her observation, the notion that Plaintiff could maintain full-time employment is unrealistic, and that working even in a desk job capacity would be impossible.

29.     Since October 17, 2024, Defendant has failed and refused to provide Plaintiff with the long-term disability benefits to which she is legally entitled, despite the fact that Plaintiff remains disabled from working.

## COUNT I
## VIOLATION OF ERISA

30.     Plaintiff hereby incorporates by reference all the foregoing paragraphs within the Complaint as though the same were fully set forth at length herein.

31.     Plaintiff's current and anticipated disability has continuously and persistently prevented her from performing the material and substantial duties of any occupation.

32.     Because of the aforesaid disability, Plaintiff has a right to benefits under Defendant's aforementioned long-term disability policy, and, to date, the Defendant has failed and refused to provide long-term disability benefits to Plaintiff beyond October 16, 2024.

33.     By denying benefits under the aforementioned policy, the Defendant breached Plaintiff's rights under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001, *et seq*.

34.     As a result of the Defendant's aforesaid ERISA violations, Plaintiff is entitled to benefits due under the Plan and other appropriate relief.

WHEREFORE, Plaintiff demands judgment against the Defendant, and requests that this Honorable Court:

A.     Enter judgment in Plaintiff's favor and against the Defendant;

B.     Order the Defendant to pay all accrued long-term disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled, with interest;

C.     Order the Defendant to continue paying Plaintiff long-term disability benefits in an amount equal to the contractual amount of benefits to which she is entitled, through the Policy's Maximum Benefit Period;

D.      Award Plaintiff attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and

E.      Award Plaintiff any and all other contractual and/or equitable relief to which she may be entitled.

Respectfully submitted,

**Swartz Culleton Ferris Trial Lawyers**

By:     /s/ Larissa K. Staszkiw
        Larissa K. Staszkiw, Esquire
        Attorney ID No. 318362
        547 E. Washington Ave.
        Newtown, PA 18940
        T: (215) 550-6553
        F: (215) 550-6557
        lstaszkiw@swartzculleton.com

        Attorney for Plaintiff

Date: June 26, 2026

**<u>CERTIFICATION</u>**

Pursuant to the requirements of Rule 4:5-1 (NOTICE OF OTHER ACTIONS), I, the undersigned, do hereby certify to the best of my knowledge, information and belief, that except as hereinafter indicated, the subject matter of the controversy referred to in the within pleading is not the subject of any other Cause of Action, pending in any other Court, or of a pending Arbitration Proceeding, nor is any other Cause of Action or Arbitration Proceeding contemplated;

1. <u>OTHER ACTIONS PENDING?</u>..............................YES ___ NO __X__
   A. If YES - Parties to other Pending Actions.

   B. In my opinion, the following parties should be
   joined in the within pending Cause of Action.

2. <u>OTHER ACTIONS CONTEMPLATED?</u>.......................YES____NO _X__
   A. If YES - Parties contemplated to be joined, in
   other Causes of Action.

3. <u>ARBITRATION PROCEEDINGS PENDING?</u>...................YES ___ NO __X_
   A. If YES - Parties to Arbitration Proceedings.

   B. In my opinion, the following parties should be
   joined in the pending Arbitration Proceedings.

4. <u>OTHER ARBITRATION PROCEEDINGS CONTEMPLATED?</u>........YES ___ NO _X__
   A. If YES - Parties contemplated to be joined to
   Arbitration Proceedings.

In the event that during the pendency of the within Cause of Action, I shall become aware of any change as to any facts stated herein, I shall file an amended certification and serve a copy thereof on all other parties (or their attorneys) who have appeared in said Cause of Action.

By:   <u>/s/ Larissa K. Staszkiw</u>
Larissa K. Staszkiw, Esquire
Attorney ID No. 318362
547 E. Washington Ave.
Newtown, PA 18940
T: (215) 550-6553
F: (215) 550-6557
lstaszkiw@swartzculleton.com

Attorney for Plaintiff

Date: June 26, 2026